United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 26, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-10963

Summary Calendar

_____

COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO

Plaintiff - Appellant

v.

TYCO POWER SYSTEMS INC

Defendant - Appellee

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:02-CV-1194-D

_____

Before KING, Chief Judge, and DAVIS and BARKSDALE, Circuit
Judges.

PER CURIAM:[*]

A union filed suit in the district court, seeking to compel

arbitration of a grievance stemming from a plant closure. The

district court granted the employer's motion for summary

judgment, and the union appeals. Agreeing with the district

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

court that the parties' dispute is expressly excluded from their agreement to arbitrate, we affirm.

## I. BACKGROUND

Communications Workers of America ("CWA" or "the union") is the exclusive representative of certain employees who were formerly employed at the Tyco Power Systems ("Power Systems" or "the company") plant in Mesquite, Texas. Power Systems bought the Mesquite plant from Lucent Technologies in December 2000 and assumed the collective bargaining agreement ("Agreement") that had governed relations between Lucent and the union. Article 7 of the Agreement provides that most (but not all) disputes between the parties are subject to arbitration. Relevantly for purposes of this appeal, Article 7 expressly excludes from arbitration: (1) those disputes that "involve[] a provision of this [Agreement] which specifies that it is not subject to arbitration" and (2) disputes that concern matters "within the judgment and discretion of the company."

In the fall of 2001, Power Systems informed CWA that the company intended to close the Mesquite plant. The union and the company engaged in bargaining over benefits that the workers would receive. Under the "Facility Closing Plan" described in Article 19 of the Agreement, Power Systems was required to give the employees certain benefits, notably severance pay. Article

2

19 also specifically provides that neither the Facility Closing Plan nor its administration is subject to arbitration.[2]

In addition to securing the benefits required under the Facility Closing Plan, the union's representatives also sought benefits under another portion of the Agreement, the Lucent Career Transition Option Program ("LCTOP"). The LCTOP provision states that the company "may" provide laid-off employees with certain benefits, including extended compensation, continuation of fringe benefits, and early pension eligibility. Power Systems refused to provide LCTOP benefits to the Mesquite employees.

In response to the company's decision, a CWA representative filed a grievance charging that the company had violated its duties under the Agreement. In the space on the grievance form that provides an opportunity to summarize the grievance, the representative wrote "Plant Closure/Surplus." In the space that asks which contractual provisions are at issue, the representative listed the articles involving severance pay under the Facility Closing Plan and several other articles of the Agreement, ten articles in all. Apparently taking the view that the grievance was simply concerned with the dispute over LCTOP benefits, Power Systems denied the grievance on the ground that LCTOP benefits are not mandatory. The union then informed Power

---

[2]     There are a few aspects of the Facility Closing Plan that are not excluded from arbitration, but CWA does not contend that they are relevant here.

3

Systems of its intent to arbitrate the dispute, but Power Systems responded that the dispute was excluded from arbitration under the Agreement.

CWA filed suit in the district court, seeking an order compelling Power Systems to arbitrate the parties' dispute.[3] Both parties moved for summary judgment. The district court granted summary judgment in favor of Power Systems. The court concluded that the Agreement expressly excludes the parties' dispute from arbitration both because the dispute involves the administration of the Facility Closing Plan and because LCTOP benefits are a matter within the company's discretion.

The union now timely appeals.

## II. ANALYSIS

We review the district court's summary judgment decision denying CWA's request to compel arbitration de novo. See Gen. Warehousemen & Helpers Union Local 767 v. Albertson's Distribution, Inc., 331 F.3d 485, 487 (5th Cir. 2003). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

Arbitration is a matter of contract, and the question whether the parties have agreed to arbitrate a dispute is

---

[3]     The suit was based on federal labor relations law, 29 U.S.C. § 301, and accordingly invoked the district court's federal question jurisdiction.

4

ordinarily for the court to decide.  AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 648-49 (1986). When, as in this case, the question is whether a certain dispute falls within the parties' arbitration clause, doubts are resolved in favor of arbitration.  "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  Id. at 650 (quoting United Steelworkers of Am. v. Warrior & Gulf Navig. Co., 363 U.S. 574, 582-83 (1960)); see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).

The district court concluded that the parties' dispute clearly fell within the Agreement's exclusions to the duty to arbitrate.  According to the district court, the subject matter of the grievance plainly involved the company's refusal to provide LCTOP benefits in conjunction with the plant closure. In reaching its decision that this grievance was excluded from arbitration, the district court relied on both the specific exclusion for matters pertaining to the administration of the Facility Closing Plan and the specific exclusion for matters that are within the company's discretion.  The district court read the Agreement as treating LCTOP benefits as discretionary.[4]

---

[4]    CWA has argued on appeal that the district court improperly strayed into the merits of the grievance in making its rulings on arbitrability, particularly in concluding that LCTOP benefits are within the company's discretion.  Cf. United

The union's primary argument on appeal is that the district court erred by failing to take into account that the grievance also involved complaints that were unrelated to the plant closure and surplus issues.  In particular, CWA directs our attention to Articles 1 and 2 of the Agreement, which the grievance form listed as two of the ten different articles that Power Systems was allegedly violating.  Article 1 provides that Power Systems recognizes CWA as the exclusive representative of covered employees.  Article 2 provides in pertinent part that neither the union nor the company shall discriminate on the basis of race, age, sex, or other specified statuses.  CWA points out that the Agreement nowhere exempts such disputes from the Agreement's general arbitration clause.

We are unpersuaded by CWA's argument.  First, as to Article 1, CWA's brief suggests that the only way that Power Systems allegedly violated its duty to recognize the union was by failing to provide LCTOP benefits in conjunction with the closing of the plant.  Reference to the undisputed evidence confirms this.  The union's representative was asked during her deposition about the

---

Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564, 567-68 (1960).
CWA is incorrect; the district court did not overstep the bounds
of the inquiry that was before it.  Since it was the district
court's duty to determine whether the dispute is subject to
arbitration, and since the Agreement excludes from arbitration
those matters that are within the company's discretion, the
district court was required to decide whether LCTOP is
discretionary.  Any overlap between merits issues and the
question of arbitrability is due to the express language of the
Agreement.

basis for the union's failure-to-recognize complaint. She

answered that "by not recognizing the contract obligations, they

were failing to recognize us as the collective bargaining agent."

Shortly thereafter came the following exchange:

> Q: Has there ever been a denial by the company that [CWA] is the exclusive representative of the employees . . . ?
>
> A: No. I don't believe that there has been.

The record shows that, in this case, the union's failure-to-

recognize complaint has no independent substance to it. Rather,

it is merely being used as a vehicle to obtain arbitration of the

company's failure to pay certain benefits.

The situation is similar with regard to CWA's reliance on

Article 2. CWA's brief does not spell out the nature of the

Article 2 complaint, but based on the motions submitted in the

district court, the gravamen of the complaint is that Power

Systems discriminated on the basis of age. The way in which the

company is said to have discriminated, however, is by failing to

provide the early pension eligibility that is one component of

the LCTOP benefit. The evidence shows that the company did not

provide any LCTOP benefits to any workers, young or old.

Therefore, although phrased in terms of Article 2, in actuality

the substance of the complaint can only be construed as (1) a

complaint about the Facility Closing Plan (namely that it should

include additional benefits) and/or (2) a complaint regarding

LCTOP. In either event, arbitration is unavailable. Complaints

7

about the administration of the Facility Closing Plan are expressly exempted from arbitration. Regarding arbitration of LCTOP benefits, the primary basis for the district court's decision was that the LCTOP provision was discretionary and therefore excluded from the duty to arbitrate. Nowhere in its brief has CWA offered any argument against that holding.

We note that this would be a different case if the grievance did blend together complaints that included both arbitrable and non-arbitrable elements. Such a situation would be presented, for example, if Power Systems had administered the Facility Closing Plan--a subject matter that is exempt from arbitration-- in a manner that allegedly discriminated on a proscribed basis, such as by giving the required termination benefits to workers of one race but not another. In that sort of mixed case, in which an otherwise clearly arbitrable violation occurs in connection with a non-arbitrable event, the policy in favor of arbitration might prevail and require the court to compel arbitration of the dispute. But despite CWA's efforts to characterize this grievance as presenting just such a scenario, here the complaints under Articles 1 and 2 have no independent substance. On the undisputed evidence, CWA is only seeking to use those labels to avoid the Agreement's express limitations on the duty to arbitrate. That is not permitted. See <u>Contra Costa Legal Assistance Workers v. Contra Costa Legal Servs. Found.</u>, 878 F.2d 329, 330 (9th Cir. 1989). In reaching this conclusion, we rely

8

on CWA's own statements regarding the nature of its complaints under Articles 1 and 2.

## III. CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.